May it please the court, good morning. Good morning. My name is Robert Rasha and I represent Mr. Guzman-Ramirez. Mr. Guzman-Ramirez complains of the sentencing procedure conducted before his Honor Judge Chang in the District Court, complaining that the District Court did not properly apply Guideline 3B1.2. Mr. Guzman-Ramirez received a sentence of 72 months based on a calculation that, as a level 29 combined with a criminal history category of 1, resulted in an advisory guideline range of 87 to 108 months. The District Court sentenced Mr. Guzman-Ramirez to a sentence of 72 months. Mr. Guzman-Ramirez asserts that the correct offense level was a level 24, which combined with a criminal history category of 1, would have resulted in a guideline range of 51 to 63 months. He asserts that that is the correct offense level based on his claim that he played a minor role in the commission of the offense. In particular, he points to Guideline 3B1.2 Application Note 3, which specifically addresses the type of conduct that Mr. Guzman-Ramirez agreed to perform in this particular case. The history of the case was that on April the 4th of 2016, a truck driven by Mr. Gonzalez, a tractor-trailer, arrived at the Oasis truck stop off of 294 in Schiller Park. Mr. Guzman-Ramirez, after receiving a telephone call, agreed to go to that location to serve two purposes. If necessary, to assist in the offloading of the cargo, which was the 50 kilograms of cocaine, and to allow someone else, Mr. Avila, who was not charged in this case, to transport 25 kilograms of that load to a location controlled by Mr. Guzman-Ramirez, where it will be stored at that location for someone else to pick up and distribute to the source's customers at a later time. That part didn't happen, right? It did not happen. What occurred at the truck stop is due to some logistical difficulties. First, that the truck would have had to travel away from the Oasis to engage in the activity to actually get the contraband out of the trap compartment. After some discussion, part of which Mr. Guzman-Ramirez participated in, and individuals actually left the location to go find somewhere to do this activity, Mr. Guzman-Ramirez did not travel with those individuals to find an alternative location. Over the course of his involvement, which including the travel from Milwaukee down 294 to the Oasis in Schiller Park, over that course of approximately four hours, about 90 minutes of which were spent at the Oasis, it was agreed that the offloading was not going to take place, and Mr. Guzman-Ramirez and his companion, Mr. Avila, who had a family relationship to the source in Mexico, left the Oasis, communicated no further with any of the involved individuals, and went back to Milwaukee. Didn't they encounter an overpass or something that the truck couldn't get under? Well, according to the recorded conversations in the case, the individuals which would have included Mr. Carrillo, whose case is currently still pending in the district court, Mr. Gonzalez, and the source of information, the government source, engaged in a conversation to try to find a location where they could offload. The driver, Mr. Gonzalez, being fully cognizant of the height of the vehicle, as he's required to do as a commercial driver, and an experienced commercial driver, when they left the Oasis and traveled down Irving Park Road, they determined that the overpass that they'd have to go by in order to get to the location they desired to go to was not sufficient for the truck to safely pass underneath the overpass. Now, the truck remained at the Oasis the entire time. So they didn't encounter that, that was just they already knew ahead of time it wouldn't go in there? That's correct. They left in a vehicle, I believe it was a pickup truck, to go scout out a location. And again, Mr. Guzman-Ramirez remained at the Oasis throughout that time. So what Mr. Guzman-Ramirez did in pleading guilty in this case is he acknowledged that he was a member of a conspiracy that conspired to distribute 50 kilograms of cocaine. What he acknowledged was his role in the offense, which was limited to allowing these kilograms, a portion of which, half of the load, to be stored at a location that he controlled, either his house or his business, that was never definitively decided, but those were his two options, until someone else came and picked them up. And for this task, he was going to receive a payment of $5,000. The task was never completed, he never received the payment, he left the Oasis, never communicated with any of the other participants after that event, and it's Mr. Guzman-Ramirez's position that the guideline application note clearly falls in a position where it should have been applied to him. Now, in the district court, the sentencing judge made note, and the government argued, that Mr. Guzman-Ramirez was equally situated to Mr. Gonzalez and Mr. Avila. That was a different court, wasn't it? No, His Honor, the district court that sentenced Mr. Guzman-Ramirez made the same comment. In his finding, he determined that Mr. Guzman-Ramirez was not as culpable as the leader, but we acknowledged that that's not the appropriate comparison. The comparison is, to the individuals involved in the activity in this case, was he less culpable than the average participant? What the district court never asserted was that Gonzalez and Avila were average participants. Avila was never charged, and later it was determined that Gonzalez received the benefit of the minor role reduction and was sentenced to 48 months, with a different criminal history category and much more extensive involvement and a higher rate of pay. A different judge. That is correct. I think an important issue, too, in this case is, these individuals were all charged in an indictment that was filed in February of 2018. There was initially a complaint filed against Carrillo and Gonzalez in January, which had a lower case number. The two indictments were filed on the same day and sent to different district court judges. We believe that Mr. Guzman-Ramirez has established the substantial burden here of establishing that it was clear error to not apply the role reduction in this case. The government's argument that the reasonableness of the sentence is not a meritorious argument is misplaced because they do not, in their brief, properly calculate what the guideline range is. The true guideline range in this case with the application of Guideline 3B1.2 would result in an offense level of 24 with a range of 51 to 63 months. Thank you. Good morning. May it please the Court? The district court properly denied or declined to give Mr. Guzman-Ramirez the minor role reduction under the guidelines. Mr. Guzman-Ramirez's burden was to show that he was substantially less culpable than the average participant in the offense. The district court found that he failed to do so and that was not clear error. Mr. Guzman-Ramirez, like Mr. Gonzalez, was involved in the transportation of multiple kilos of cocaine from one location to the other. The same is true for Mr. Avila. Mr. Guzman-Ramirez was to get $5,000 payment for his role in transporting the cocaine. Mr. Gonzalez, the truck driver, was to get $30,000. They were both going to get paid. The record doesn't disclose whether Avila was going to get paid, but as compared with Mr. Gonzalez, the defendant in this case was going to get paid. In fact, at a similar rate. Gonzalez, the truck driver who brought up 50 kilograms from Laredo, Texas to Chicago, was to get $30,000. That's about a more than 20-hour drive from Laredo to Chicago. While Guzman-Ramirez was going to transport 25 kilos of cocaine from Chicago to Milwaukee about an hour and a half drive in return for $5,000. In fact, Guzman-Ramirez was not actually going to take possession of the 25 kilos of cocaine between Chicago and Milwaukee. That's what Avila was here for. As compared with Gonzalez and Avila, Guzman-Ramirez was indistinguishable in terms of culpability. As compared with Carrillo, the broker at the border who arranged for Gonzalez to transport the drugs from Laredo to Chicago, Guzman-Ramirez was less culpable. He was also less culpable, as the district court noted, than Individual A, the unnamed supplier in Mexico. But everybody was less culpable than Individual A, the supplier in Mexico. But as compared with the average participant in the offense, which the district court found to include Gonzalez and Avila, Guzman-Ramirez was similarly culpable. One final thing the district court noted was Guzman-Ramirez, as an indication of his relative culpability, did not recruit Avila. It was the government's contention that he had done so. The district court declined to make that finding. So Guzman-Ramirez didn't recruit anybody, but neither did Gonzalez. The district court noted that Gonzalez did not recruit anybody else to participate in the offense, and neither did Avila. So all three of them, Gonzalez, Avila, and the defendant here, occupied a role similar to one another, less culpable than the broker and the supplier down at the border, but similar, and Guzman-Ramirez didn't show that he was substantially less culpable than these other average participants. The agreement called for him to store the cocaine as well as see to its transportation between Chicago and Milwaukee. In fact, that is something that makes him relatively more culpable than Gonzalez, is that Guzman-Ramirez was going to have, the plan was for him to store 25 kilos of cocaine in Milwaukee, either at his home or his business. That would have given him personal access to, you know, half a million dollars worth of cocaine. Gonzalez, the truck driver, did not have access to the cocaine that was concealed in the truck and he needed help actually to, I guess, undo the trap and offload the cocaine. So Gonzalez, I'm sorry, Guzman-Ramirez was in a relatively more culpable position than the truck driver. What was supposed to happen after he got it to Milwaukee? The idea, I think the plan was, as I understand it, that he was going to await further instructions about who would pick up the cocaine from him in Milwaukee. Half of it. Half of it will go to Gonzalez. There's 50 kilograms, right? Right. And so half of it is going to be split somewhere. Right. He was going to take 25 of those 50 to Milwaukee with Avila and await the instructions, I think, from Individual A, the supplier, with whom the defendant, Guzman-Ramirez, was in direct contact. That, again, makes him relatively more culpable than Avila, for example, who there's no evidence that Avila was in direct contact with the supplier in Mexico or with the broker down at the border. Well, it seems at some point that they were really arguing that Gonzalez should have got a longer sentence. Well, the government contended— It seems to be the bottom line when we look at it all. The government advocated for a longer sentence for Gonzalez. That took place before a different district court at a later date. We contended that the same guidelines should apply to Gonzalez as applied to Guzman-Ramirez. We objected to the minor rule reduction for Gonzalez, and the district court there granted it over the government's objection. Obviously, you objected to it here as well, and you didn't get the minor— Correct. That doesn't make what the district court did here an error. It was not able to prognosticate what a different court would do when sentencing Gonzalez, and it sentenced Guzman-Ramirez based on a correct application of the guidelines. They used the word disparity. I don't know whether that's even a legal term, but comparing one same operation, one to another in a different place. Well, you know, was the disparity unwarranted is the question. And Gonzalez, in getting a 48-month sentence, was proceeding from a lower guideline range because he did get the minor rule reduction. Now, the government's position was that that was not merited, but that accounted for the disparity there. This court has said recently that the district court judge sentencing Guzman-Ramirez is not required at all to consider what another district court judge may do in the future with an unsentenced defendant. So I don't think there was any showing of— I mean, there's no basis for the comparison. Right. There's nothing to compare to. And where the facts are the same, and the government's position is the same, and the guidelines are the same, and the drug quantity is the same, there was no basis for the district court here to anticipate that Gonzalez would get a considerably lower sentence. For all these reasons, and the ones we say in our brief and the 28J letter, the district court did not clearly err in denying the minor rule reduction, and we ask the court to affirm the sentence. Thank you, counsel. The nuance here is that the district court that sentenced Mr. Guzman-Ramirez was aware that a pre-sentence investigation report had already been prepared on Mr. Gonzalez where the minor rule was applied to him. The nuance being then, unlike Mr. Gonzalez, Mr. Guzman-Ramirez had the burden of convincing the court that the guideline calculation in his pre-sentence report was incorrect. Mr. Gonzalez was not in that position. It was the government that bore the burden of establishing that the application was not correct. But what is clear in this case is, number one, Mr. Guzman-Ramirez did not agree to transport any drugs. He agreed to store the drugs. Avila and Guzman-Ramirez traveled to the Oasis in separate vehicles. The guideline application, note 3A, specifically addresses a person who agrees to store the drugs as being a minor participant. What is equally clear is that, although the district court for Mr. Guzman-Ramirez did discuss the roles of Gonzalez and Avila, that court never determined that those individuals were average participants. He applied no such label to them. It is not impossible to have multiple individuals in a drug distribution conspiracy to play minor roles. That's not only assignable to one individual. So it's our position, as outlined in our brief, and supported by the facts in this case, Mr. Guzman-Ramirez's role was limited to that four-hour period. Mr. Gonzalez, in regards to recruiting, Mr. Gonzalez recruited a companion to take the trip with him for the purpose of helping him drive the vehicle and to deflect suspicion of law enforcement. Mr. Gonzalez had control of that entire load for several days. He could have gone anywhere he wanted with that whole 50-kilogram load. He clearly knew where the compartment was because he engaged in the conversation about what needed to be done to access the load. So, given that the posture of the facts of the case are such that Guzman-Ramirez's role was less than Gonzalez's, and the application note specifically applies to him, it's the position that he should have been sentenced as a level 24 offender with a criminal history category of 1, which would have taken him below the range of the sentence that His Honor Judge Chang applied in this case. At least you agree with the government. One thing, Gonzalez should have gotten a longer sentence. I'm not saying Gonzalez should have gotten a longer sentence, but what I am saying is Mr. Gonzalez had a higher criminal history category, had a history of acting as a driver for a cartel. Mr. Guzman-Ramirez's activity was limited to this case, was an otherwise law-abiding citizen his entire life, and had no prior interaction with a law enforcement agency. Thank you, counsel. Thank you. Thanks to both counsel. The case is taken under advisement.